# Exhibit H

```
 1                UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF TEXAS
 2                    GALVESTON DIVISION
 3   RONALD SELF, ET AL.,          )
             Plaintiffs,           )
 4                                 )
     V.                            ) CIVIL ACTION
 5                                 ) NO. 11-00070
     MERITAGE HOMES CORPORATION,   )
 6   ET AL.,                       )
             Defendants.           )
 7
 8   ***********************************************
                 ORAL/VIDEOTAPED DEPOSITION OF
 9
                         RONALD SELF
10
                         MAY 1, 2013
11   ***********************************************
12        ORAL/VIDEOTAPED DEPOSITION OF RONALD SELF,
13   produced as a witness at the instance of DEFENDANTS,
14   and duly sworn, was taken in the above-styled and
15   numbered cause on WEDNESDAY, MAY 1, 2013, from 12:12
16   p.m. to 3:01 p.m., before Pam Gwin Coder, CSR in and
17   for the State of Texas, recorded by machine shorthand,
18   at the offices of PADILLA & RODRIGUEZ, LLP,
19   1776 Yorktown, Suite 535, Houston, Texas, pursuant to
20   the Federal Rules of Civil Procedure and the provisions
21   stated on the record or attached hereto; signature
22   having been waived.
23
24
25                    JOB NO. 1-142827
```

```
 1                A P P E A R A N C E S
 2
    FOR PLAINTIFF:
 3     MR. JOHN M. PADILLA
            -and-
 4     MR. J. MOISES CEDILLOS
       PADILLA & RODRIGUEZ, LLP
 5     1776 Yorktown, Suite 535
       Houston, Texas  77056-6106
 6     832.740.4300
       jpadilla@pandrlawfirm.com
 7     mcedillos@pandrlaw.com
 8
    FOR DEFENDANTS:
 9     MR. SCOTT R. MCLAUGHLIN
            -and-
10     MS. AMANDA Z. PATRICK
       JACKSON WALKER
11     1401 McKinney, Suite 1900
       Houston, Texas  77010
12     713.752.4200
       smclaughlin@jw.com
13     apatrick@jw.com
14
    VIDEOGRAPHER:
15     MR. COREY LABORDE
       US LEGAL SUPPORT
16
17  ALSO PRESENT:
       MS. PATRICIA SERNA, Court Reporting Intern
18
19
20
21
22
23
24
25
```

```
 1            E X A M I N A T I O N    I N D E X
 2
   WITNESS: RONALD SELF
 3
   EXAMINATION                                      PAGE
 4
      BY MR. MCLAUGHLIN                                4
 5    BY MR. PADILLA                                 106
 6 FURTHER EXAMINATION
 7    BY MR. MCLAUGHLIN                              112
 8 SIGNATURE WAIVED                                  117
   REPORTER'S CERTIFICATION                          118
 9
10            E X H I B I T   I N D E X
11 SELF EXHIBIT NO. 1                                 66
      E-mail dated 7/21/09 to
12    Ron Self from David
      Donaldson
13 SELF EXHIBIT NO. 2                                 73
      E-mail string 10/13/09
14 SELF EXHIBIT NO. 3                                 74
      E-mail string 3/26 and 3/27
15    '10
   SELF EXHIBIT NO. 4                                 78
16    March 2010 e-mail string
   SELF EXHIBIT NO. 5                                 93
17    August 2010 e-mail string
   SELF EXHIBIT NO. 6                                 97
18    Meritage Homes employment
      application
19 SELF EXHIBIT NO. 7                                 97
      E-mail string 8/4/09
20 SELF EXHIBIT NO. 8                                100
      E-mail string 12/09
21 SELF EXHIBIT NO. 9                                105
      Ronald Self resume
22
23
24
25
```

1      A    But it got to the point where I was working --
2  I was at work at 6:30 and leaving at 7:00 and coming in
3  on Saturdays just to make sure that, you know,
4  warranties could get signed off and trying to
5  coordinate everything with the homes.
6      Q    All right.  So would you say that that was your
7  regular schedule from the time you began your
8  employment at Meritage through the time you ended your
9  employment at Meritage 6:30 to 7:00 and coming in on
10 Saturdays?
11     A    Yes.
12     Q    Okay.  So -- so from day one?
13     A    Yes.  It was from day one.
14     Q    So the schedule didn't change when you went
15 from being over one community to being over two
16 communities?
17     A    No because they had me doing warranty in the
18 other community, helping out the other guy that was
19 over there.
20     Q    Who was that guy?
21     A    There was Mike Cridland.  He was over there.
22     Q    All right.  So is that the guy you were
23 referring to when you say you were helping out the
24 other guy with warranties?
25     A    Yes.  With warranty.

1   Q   All right.

2   A   And when they finally let him go, the workload
3   became my load.

4   Q   All right.  So then your testimony, I take it,
5   is that you worked 12 1/2 hours, five days a week; and
6   then on Saturday you worked some, too?

7   A   I would come in Saturday mornings and usually
8   at least for a few hours.

9   Q   Okay.  So Monday through Friday, is it your
10  testimony that you worked 12 1/2 hours each day?

11  A   Oh, yeah.

12  Q   Okay.  Do you have anything in your possession
13  that would back that up?

14  A   Just people that know me.

15  Q   Yeah, and besides your testimony --

16  A   Yeah.

17  Q   -- your testimony.  I'm not disregarding that.
18  I'm just asking if you have any calendars, diaries,
19  e-mails, anything that would kind of show that pattern?

20  A   No.

21  Q   Okay.  And when you say people that know me,
22  who are you referring to?

23  A   Just my wife and being away from my family.

24  Q   All right.  Do you have any kids?

25  A   Oh, yes.

RONALD SELF                                    5/1/2013

75

      1       Q    Okay.  The -- what I want to ask you about is
      2   it begins on the third line so read that where she
      3   says:  I told him that could be corrected.  Period.  He
      4   wanted to know what your job was.  Period.  And then
      5   this is the part I want to ask you about.
      6            Ms. Armstrong says:  I told him to hire
      7   experienced trades and schedule them to perform the
      8   work and check the results.
      9            Now, is her characterization of your job
     10   accurate?
     11       A    That's not accurate.
     12       Q    So Ms. Armstrong is not telling the truth about
     13   what your job is?
     14            MR. PADILLA:  Objection.
     15       A    No, she doesn't know.
     16            MR. PADILLA:  Mischaracterizes the
     17   evidence --
     18            THE REPORTER:  I'm sorry.  What did you
     19   say?
     20            MR. PADILLA:  Mischaracterizes the
     21   evidence and argumentative.
     22       A    She doesn't know how all the vendor system and
     23   all that worked.
     24       Q    (By Mr. McLaughlin)  Okay.  Did you coach any
     25   of your kids' sports teams while you were working at

1  Meritage?
2     A    Yes.
3     Q    How did you do that if you were not able to
4  leave work until 7:00 Monday through Friday?
5     A    We had a couple of coaches.  I mean, I would
6  just get there as soon as I could.
7     Q    What time did practice start?
8     A    It wasn't every day.
9     Q    What time did it start?
10    A    Usually 6:00.
11    Q    Was it -- were you coaching more than one
12 sports team or just one?
13    A    Just one.
14    Q    Which -- what age?  Which child?
15    A    My middle.
16    Q    Okay.  How old?  Was that a he?
17    A    He.
18    Q    How old was he at the time?
19    A    10.
20    Q    What sport?
21    A    9 --
22    Q    What sport?
23    A    No, he was younger than that.  Baseball.
24    Q    Baseball?  How many practices a week did you
25 have on Monday through Friday?

```
 1      A    Just one.
 2      Q    All right.  Were you the head coach?
 3      A    No.
 4      Q    An assistant?
 5      A    Yes.
 6      Q    Who was the head coach?
 7      A    It was -- I don't remember.  I mean, it was
 8  years ago.
 9      Q    What was the name of the team?
10      A    It was Little League.
11      Q    Do you know the name of your son's Little
12  League team back then?
13      A    What year was that?  It was probably the
14  Yankees.  I can't remember exactly.
15      Q    And it's your testimony that that baseball team
16  only practiced once a week?
17      A    And then we'd practice on the weekend.
18      Q    Yeah.  During the week.  I had asked you about
19  Monday through Friday.
20      A    Yeah.
21      Q    And then when was the game?
22      A    Usually weekend, evening, during the week.
23      Q    Do you still have any schedules from that?
24      A    No.
25      Q    What league sponsored that team?
```

```
 1      A     I don't remember.
 2      Q     You don't remember the name of the league that
 3   the Little League team was in?
 4      A     The league?
 5      Q     Yeah.  You know, usually there's a regional --
 6      A     Pearland.
 7      Q     Pearland.  All right.  So it was a Pearland
 8   Little League team?
 9      A     Yes.
10      Q     Okay.  All right.
11              (Marked Self Exhibit No. 4.)
12      Q     (By Mr. McLaughlin)  You can take a minute if
13   you'd like to read that over.  I think I'm only going
14   to ask you about the first page.
15              Actually this is -- you can read it all
16   if you want.  This looks like one of those angry
17   customers you were talking about.  Let me know when
18   you've read that, Mr. Self.
19              MR. PADILLA:  You want him to read a part
20   of it or the whole thing.
21              MR. MCLAUGHLIN:  Well, I think -- I may
22   ask him some questions about the back part, too.
23      Q     (By Mr. McLaughlin)  I wasn't thinking that but
24   I will so I think you ought to look at all of it.  By
25   the way, while I'm asking you questions, if you need to
```

```
 1  let us know if it's -- if it's correct essentially and
 2  it -- and for the record purposes, I'll identify it.
 3  It's the employment application you filled out with
 4  Meritage.
 5              (Marked Self Exhibit No. 6.)
 6      Q    (By Mr. McLaughlin)  If you'll take a look and
 7  make sure it's accurate, please.
 8      A    This here.
 9      Q    All right.  You don't see anything on there
10  that's incorrect?
11      A    No.
12      Q    Okay.  That's all I'm going to ask you.  I'm
13  passing over number 7.
14              (Marked Self Exhibit No. 7.)
15      Q    (By Mr. McLaughlin)  And it's your e-mail at
16  the top there that I'm going to ask you about,
17  Mr. Self.
18      A    I was just trying to calm down a homeowner.
19      Q    Which part -- which part were you trying to
20  calm down a homeowner?
21      A    Talking about the -- the drinking.
22      Q    How would it -- how would it calm down a
23  homeowner to tell the homeowner you're not there after
24  5:00?
25      A    Well, I mean I'm not at that house every second
```

```
 1   of the day.  I'm within two communities so, you know, I
 2   just try to make a note to them that it's not my
 3   intention of staying at their house all day.  Some of
 4   the homeowners, they felt like we should be on their
 5   house only all day.  And it wasn't the case for me.
 6       Q    When you say:  We are not there after 5:00,
 7   your intent when you said that was to tell the
 8   homeowner you were not at her house after 5:00?
 9       A    Yeah, I mean.
10       Q    Wouldn't it have been clearer to just say:  I
11   am not at your house after 5:00?
12       A    It can be worded whichever way.  That's an
13   opinion.
14       Q    Okay.  But when you say we are not there after
15   5:00, you mean I am not at your house after 5:00,
16   right?
17       A    Yes.
18       Q    Okay.  Now, did you -- you said something here
19   about finding trades.  I didn't ask you about that
20   earlier.  Do you see the sentence I'm referring to?
21       A    Yes.
22       Q    Is that something you had to do very often?
23       A    No.
24       Q    But you had to --
25       A    I mean, I just said it to that homeowner.  I
```

| From: | Self, Ron |
| --- | --- |
| Sent: | Tuesday, August 04, 2009 4:20 PM |
| To: | Loi Nguyen |
| Subject: | RE: 2731 Villa Pisa Ln. |
| | |
| Follow Up Flag: | Follow up |
| Flag Status: | Completed |

The house has not been finished in framing stage. If you go to the house you will see the paint on the floor those items. We are waiting on lumber to arrive to finish this. As far as the drinking we are not there after five so we can't watch them every second but its not allowed. If we ever catch a trade they are fined. Your house will be swept out. We will meet once everything is in place before we sheet rock to verify all items.


Thanks Ron


**From:** Loi Nguyen [mailto:loi.tan@gmail.com]
**Sent:** Tue 8/4/2009 1:59 PM
**To:** Self, Ron
**Cc:** Lipnicki, David; kristine.ferrone@gmail.com
**Subject:** 2731 Villa Pisa Ln.


Hi Ron,

You asked us to email you the items we saw that weren't framed out correctly per our agreements at the pre-construction meeting with Mike and David. The Nicolas blue print/floor plan should have the following mods:

1. The living room should not be there. We took the Study Option with a closet. And from the looks of it, the living room was framed, no sign of a closet or wall with french doors.
2. The small window on the 2nd level above the front door should not be there. We have the C elevation but that window should be filled in with a brick design per the agreed to plan.
3. The wall between the Kitchen and the Dining room should not be there. There should be a through way, where the mini bar is, between the kitchen and the dining per the floor plan
4. The protruding archway between the kitchen and the breakfast area should not be there. We took out that extension and made the archway flush with the wall.

Also, we have concerns with insects. A plate of old food was found in the house near the stairs with a trail of ants about 20ft long leading up to it. We understand that construction sites will have trash and food left behind, but can you suggest the workers keep it outside to prevent insects? We also found beer bottles both inside and outside the house... We don't believe drinking on the job is advisable or safe and could cause a major liability for the company.

Thanks,
Loi and Kristine



| | |
|---|---|
| **From:** | Self, Ron |
| **Sent:** | Wednesday, December 30, 2009 7:57 PM |
| **To:** | Langlois, John C. |
| **Subject:** | RE: 2736 Terranova |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

We have not even installed plumbing yet. I have all of your options and your house we be built just like every home we build. All of the roughs will be installed once we put the roof on Monday. The floor will be screwed down level once we get sheet rocked. I am off for the new year but we will meet once we are ready for sheetrock. As far as your accent brick I will get with David to find out but the options clearly state above the windows.

Thanks Ron

---

**From:** Langlois, John C. [mailto:jclanglois@gccisd.net]
**Sent:** Wed 12/30/2009 6:31 PM
**To:** Self, Ron
**Subject:** RE: 2736 Terranova

Ron,
That is not correct on the accent brick/stone. I'm fairly sure it should go around the top of the windows if not all the way around. Also, we paid to have the upstairs wet bar plumbed for a drain, hot and cold water valves, and an electrical outlet on the right hand side of the back wall. Tonight I didn't see any water lines or holes for plumbing on the wet bar. Also the particle board flooring appeared to be uneven or warped in some places, probably because of the rain. What is the tolerance for the 2nd floor leveling? And what is the cost for complete leveling as I would like to put in a wood floor. Will you be on the site tomorrow morning?

**Jay Langlois**
Head Men's Soccer Coach
Baytown Lee High School
832-758-7976 cell
281-420-4535 ext. 1004

---

**From:** Self, Ron [mailto:Ron.Self@meritagehomes.com]
**Sent:** Sun 12/20/2009 10:48 PM
**To:** Langlois, John C.
**Subject:** RE: 2736 Terranova

That is fine on the bar and we will get the electrical guys to add a outlet. I also found out what you paid for on the accent brick. There is only one cube that goes over the windows on your options.

thanks Ron

---

**From:** Langlois, John C. [mailto:jclanglois@gccisd.net]
**Sent:** Sun 12/20/2009 10:00 AM
**To:** Self, Ron
**Subject:** RE: 2736 Terranova



DEPOSITION EXHIBIT 8
713-653-7100

Ron,
We would like to lower the entire kitchen counter to sink level but want to ensure that it is still the same width so we can pull chairs up to the front of it and also we would like to ensure that we recover one of the lost electrical outlets by having at least one placed on the side of the counter facing the little kitchen desk. We also would like to review the front stone/brick layout of the facade.

**Jay Langlois**
Head Men's Soccer Coach
Baytown Lee High School
832-758-7976 cell
281-420-4535 ext. 1004

---

**From:** Self, Ron [mailto:Ron.Self@meritagehomes.com]
**Sent:** Sun 12/13/2009 7:03 PM
**To:** Langlois, John C.
**Subject:** RE: 2736 Terranova

That is fine with communication. I promise Meritage will deliver you the house that you will be happy with. Your house will be built from your options and everything we went over in the pre start meeting. Our next scheduled meeting will be before we sheetrock. If you have any other questions write them down for the next meeting or just email me and I will respond to your concerns.

Thanks Ron

---

**From:** Langlois, John C. [mailto:jclanglois@gccisd.net]
**Sent:** Sun 12/13/2009 3:21 PM
**To:** Self, Ron
**Subject:** RE: 2736 Terranova

We are very much hands-on people and like to be involved in every step. Some things that have happened with Meritage, already, didn't happen when we built our first house here. We want to be sure that we have constant communication and there are no more miscommunications. Also we want to make sure we're on the same page with the elevation and front facade. Finally, we have a question about the step in the media room, since we've only seen media rooms with double steps. We appreciate the fact that we can now communicate directly with you instead of David. Frankly, dealing with David has caused us a bit of frustration and concern. We know you are very busy; and we want you to know that we will not take up your time unless we feel that it is absolutely necessary.

**Jay Langlois**
Head Men's Soccer Coach
Baytown Lee High School
832-758-7976 cell
281-420-4535 ext. 1004

---

**From:** Self, Ron [mailto:Ron.Self@meritagehomes.com]
**Sent:** Fri 12/11/2009 3:17 PM
**To:** Langlois, John C.
**Subject:** RE: 2736 Terranova

I will not be here after 5 pm or tomorrow. What is the purpose of meeting?

Ron

**From:** Langlois, John C. [mailto:jclanglois@gccisd.net]
**Sent:** Friday, December 11, 2009 12:52 PM
**To:** Self, Ron
**Subject:** 2736 Terranova

Ron,
Could we meet this afternoon after 5:30 or tomorrow?

**Jay Langlois**
Head Men's Soccer Coach
Baytown Lee High School
832-758-7976 cell
281-420-4535 ext. 1004

This e-mail and any files transmitted with it are confidential and
intended solely for the use of the individual or entity to whom
they are addressed.
If you have received this e-mail in error please notify the
originator of the message. This footer also confirms that this
e-mail message has been scanned for the presence of computer viruses.

Any views expressed in this message are those of the individual
sender, except where the sender specifies and with authority,
states them to be the views of Goose Creek Consolidated Independent School District.

Scanning of this message and addition of this footer is performed
by Websense E-mail Filter software in conjunction with
virus detection software.

This e-mail and any files transmitted with it are confidential and
intended solely for the use of the individual or entity to whom
they are addressed.
If you have received this e-mail in error please notify the
originator of the message. This footer also confirms that this
e-mail message has been scanned for the presence of computer viruses.

Any views expressed in this message are those of the individual
sender, except where the sender specifies and with authority,
states them to be the views of Goose Creek Consolidated Independent School District.

Scanning of this message and addition of this footer is performed
by Websense E-mail Filter software in conjunction with
virus detection software.

---

This e-mail and any files transmitted with it are confidential and
intended solely for the use of the individual or entity to whom
they are addressed.
If you have received this e-mail in error please notify the
originator of the message. This footer also confirms that this
e-mail message has been scanned for the presence of computer viruses.

Any views expressed in this message are those of the individual
sender, except where the sender specifies and with authority,
states them to be the views of Goose Creek Consolidated Independent School District.

Scanning of this message and addition of this footer is performed
by Websense E-mail Filter software in conjunction with
virus detection software.

---

This e-mail and any files transmitted with it are confidential and
intended solely for the use of the individual or entity to whom
they are addressed.
If you have received this e-mail in error please notify the
originator of the message. This footer also confirms that this
e-mail message has been scanned for the presence of computer viruses.

Any views expressed in this message are those of the individual
sender, except where the sender specifies and with authority,
states them to be the views of Goose Creek Consolidated Independent School District.

Scanning of this message and addition of this footer is performed
by Websense E-mail Filter software in conjunction with
virus detection software.

---

This e-mail and any files transmitted with it are confidential and
intended solely for the use of the individual or entity to whom
they are addressed.

If you have received this e-mail in error please notify the
originator of the message. This footer also confirms that this
e-mail message has been scanned for the presence of computer viruses.

Any views expressed in this message are those of the individual
sender, except where the sender specifies and with authority,
states them to be the views of Goose Creek Consolidated Independent School District.

Scanning of this message and addition of this footer is performed
by Websense E-mail Filter software in conjunction with
virus detection software.

---

This e-mail and any files transmitted with it are confidential and
intended solely for the use of the individual or entity to whom
they are addressed.
If you have received this e-mail in error please notify the
originator of the message. This footer also confirms that this
e-mail message has been scanned for the presence of computer viruses.

Any views expressed in this message are those of the individual
sender, except where the sender specifies and with authority,
states them to be the views of Goose Creek Consolidated Independent School District.

Scanning of this message and addition of this footer is performed
by Websense E-mail Filter software in conjunction with
virus detection software.

---

This e-mail and any files transmitted with it are confidential and
intended solely for the use of the individual or entity to whom
they are addressed.
If you have received this e-mail in error please notify the
originator of the message. This footer also confirms that this
e-mail message has been scanned for the presence of computer viruses.

Any views expressed in this message are those of the individual
sender, except where the sender specifies and with authority,
states them to be the views of Goose Creek Consolidated Independent School District.

Scanning of this message and addition of this footer is performed
by Websense E-mail Filter software in conjunction with
virus detection software.