## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| RONALD SELF, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-11-0070 |
| | § | |
| MERITAGE HOMES | § | |
| CORPORATION, *et al.*, | § | |
|     Defendants. | § | |

## <u>MEMORANDUM AND ORDER</u>

This Fair Labor Standards Act ("FLSA") case is before the Court on the Motion for Summary Judgment on Administrative Exemption ("Motion") [Doc. # 80] filed by Defendants Meritage Homes Corporation and Meritage Homes of Texas, LLC (collectively, "Meritage"), to which Plaintiffs[1] filed a Response [Doc. # 88], and Meritage filed a Reply [Doc. # 96].[2] Having reviewed the record and applicable legal authorities, the Court **grants** the Motion.

---

[1]    Plaintiffs are Ronald Self, Shane Robberson, Jeffrey Scott Herman, Larry Meredith, Daryn Shaw, Matthew Arasin, and Robert David Jones.

[2]    Also pending is Plaintiffs' Motion for Partial Summary Judgment [Doc. # 76] on the administrative exemption, the issue of willfulness, and Meritage's "good faith" defense, to which Defendants filed a Response [Doc. # 94], and Plaintiffs filed a Reply [Doc. # 95]. Also pending is Defendants' Motion for Summary Judgment on Alleged Unpaid Overtime [Doc. # 84], to which Plaintiffs filed a Response [Doc. # 92], and Defendants filed a Reply [Doc. # 97]. Plaintiff's Motion for Partial Summary Judgment [Doc. # 76] is **denied** as to the administrative exemption. These two pending motions are otherwise **denied as moot**.

## I.   <u>BACKGROUND</u>

Meritage is a home builder who sells houses that are built according to a limited number of floor plans in a particular community.  Some of the homes are built for specific buyers incorporating the buyers' selected options, while others are built as "spec homes" and later sold to a purchaser of the finished house.  Meritage does not use its own employees to build the houses but, instead, uses subcontractors for each phase of the home construction process.  Some subcontractors provide only labor, while others provide both labor and materials.

Plaintiffs were previously employed by Meritage as Construction Managers who were responsible for managing the subcontractors or "trades" who were performing the actual construction work on the homes.  Construction Managers also dealt directly with home purchasers during the construction phase, and managed warranty work on homes after they were sold.  Construction Managers at Meritage report directly to a "project manager" or "area manager," but the Construction Managers were "the eyes and ears on the ground" for Meritage.  *See* Deposition of Daryn Shaw, Exh. 11 to Plaintiff's Motion [Doc. # 76], p. 205.  Meritage classified

Plaintiffs as exempt administrative employees and did not pay overtime wages for hours worked in excess of forty per week.[3]

Plaintiff Ronald Self filed this FLSA lawsuit in February 2011, alleging that he and other construction managers were incorrectly classified as exempt and should have been paid overtime. The other six Plaintiffs later filed Notices of Consent to join this lawsuit. Conditional certification of this lawsuit as a collective action was denied by Opinion and Order [Doc. # 33] entered July 11, 2012. After an adequate time to complete discovery, the parties filed motions for summary judgment. Defendants' Motion for Summary Judgment on Administrative Exemption has been fully briefed and is ripe for decision.

## II.   STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Summary judgment "should be rendered if the pleadings,

---

[3]      Plaintiffs testified that when performing similar work at other construction companies before and/or after their employment at Meritage, they were likewise paid on a salary basis without overtime pay.

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

Where the movant bears the burden of proof at trial on the issues at hand, as is the case of Defendants' Motion for Summary Judgment on Administrative Exemption, it "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response.  *See Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action."  *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir.

2013).  "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted); *see also Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  The Court may make no credibility determinations or weigh any evidence.  *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413).

## III.   ANALYSIS - ADMINISTRATIVE EXEMPTION

### A.   General Principles

Plaintiffs allege that they worked in excess of forty hours per week and were not compensated for the overtime hours.[4]  Generally, the FLSA requires an employer to pay overtime compensation for work performed by an employee in excess of forty

---

[4]     Defendants do not concede that Plaintiffs worked more than forty hours per week, and affirmatively dispute that Plaintiffs worked the number of overtime hours alleged.

hours per week.  *See* 29 U.S.C. § 207(a)(1); *Talbert v. Am. Risk Ins. Co., Inc*., 405 F. App'x 848, 852 (5th Cir. Dec. 20, 2010).

There are, however, certain exemptions that apply.  In this case, Defendants argue that Plaintiffs are exempt from FLSA overtime wages pursuant to the "administrative" exemption found in 29 U.S.C. § 213(a)(1).[5]  Whether an employee falls within the administrative exemption is primarily a question of fact, but the ultimate decision whether the employee is exempt is a question of law.  *See Lott v. Howard Wilson Chrysler-Plymouth, Inc.,* 203 F.3d 326, 330 (5th Cir. 2000); *Talbert*, 405 F. App'x at 852.  The Court construes FLSA exemptions narrowly, and the employer bears the burden of proof.  *Cheatham v. Allstate Ins. Co.,* 465 F.3d 578, 584 (5th Cir. 2006); *Talbert*, 405 F. App'x at 852.

"In deciding whether an employee is exempt under 29 U.S.C. § 213(a)(1), this Court first asserts findings of historical fact."  *Lott*, 203 F.3d at 331 (citing *Dalheim*, 918 F.2d at 1226); *see also Cheatham*, 465 F.3d at 584 (noting that the district court properly gathered historical facts, "that is, how the employees spent their working

---

[5]     On January 16, 2009, the Department of Labor ("DOL") issued Opinion Letter FLSA 2009-29 stating DOL's position that employees who supervised and coordinated the construction of new homes were exempt under the administrative exemption.  The DOL withdrew the Opinion Letter on March 9, 2009 "for further consideration," but the DOL has never taken a contrary position, either before issuance of the Opinion Letter or after.

time . . . from [the employees'] depositions").[6]  "Second, this Court must make

inferences from the facts in applying the regulations and interpretations promulgated

under 29 U.S.C. § 213(a)(1)."  *Lott*, 203 F.3d at 331.  "Lastly, the district court must

make the ultimate determination of whether an employee was exempt."[7]  *Id.*; *see also*

*McKee v. CBF Corp.*, 299 F. App'x 426, 431 (5th Cir. Nov. 17, 2008).

An employee within the administrative exemption is one (1) who is

compensated on a salary or fee basis at a rate of not less than $455 per week,

(2) whose "primary duty is the performance of office or non-manual work directly

related to the management or general business operations of the employer or the

employer's customers"; and (3) whose "primary duty includes the exercise of

---

[6]    In this case, the Court has read the deposition transcript of each Plaintiff and has
gathered the historical facts described herein from those depositions.  The full
deposition transcripts are attached as exhibits to Plaintiffs' Motion [Doc. # 76] as
follows:  Deposition of Matthew Arasin ("Arasin Depo."), Exhibit 5; Deposition of
Jeffrey Herman ("Herman Depo."), Exhibit 6; Deposition of Shane Robberson
("Robberson Depo."), Exhibit 7; Deposition of Robert D. Jones ("Jones Depo."),
Exhibit 8; Deposition of Larry D. Meredith ("Meredith Depo."), Exhibit 9; Deposition
of Ronald Self ("Self Depo."), Exhibit 10; and Deposition of Daryn Shaw ("Shaw
Depo."), Exhibit 11.

[7]    Plaintiffs rely on two district court cases from Florida.  *Cotten v. HFS-USA, Inc.*, 620
F. Supp. 2d 1342 (M.D. Fla. 2009); *Gottlieb v. Constr. Servs. & Consultants, Inc.*,
2006 WL 5503644 (S.D. Fla. July 24, 2006).  Defendants rely on a district court case
from Washington.  *Black v. Colaska Inc.*, 2008 WL 4681567 (W.D. Wash. Oct. 20,
2008).  Although the plaintiffs' job responsibilities in these three cases appear similar
to those of Plaintiffs in this case in some respects, none of the three cases cited by the
parties is binding on this Court, and they are each fact specific.  The Court has based
its decision in this case on Plaintiffs' deposition testimony and all other evidence in
the record, the statute and regulations, and applicable Fifth Circuit case law.

discretion and independent judgment with respect to matters of significance."
29 C.F.R. § 541.200; *Talbert*, 405 F. App'x at 852.  In this case, Plaintiffs concede the
first requirement for the administrative exemption, but dispute the remaining two
requirements.

### B.      <u>Primary Duty</u>

To satisfy the second requirement for the administrative exemption, the
employee's primary duty must be "the performance of office or non-manual work
directly related to the management or general business operations of the employer or
the employer's customers."  29 C.F.R. § 541.700(a).  "Primary duty" means "the
principal, main, major, or most important duty that the employee performs"
considering all the facts in the case and "with the major emphasis on the character of
the employee's job as a whole."  *Id.*  "[T]he employee's primary duty will usually be
what she does that is of principal value to the employer, not the collateral tasks that
she may also perform even if they consume more than half her time."  *Dalheim v.
KDFW–TV*, 918 F.2d 1220, 1227 (5th Cir. 1990) (citation omitted); *see also Lott*, 203
F.3d at 332; *Howell v. Ferguson Enters.*, 93 F. App'x 12, 14 (5th Cir. Feb. 5, 2004);
29 C.F.R. § 541.700(b).  "Work directly related to management or general business
operations includes, but is not limited to, work in functional areas such

as . . . budgeting; . . . quality control; purchasing; procurement; . . . labor relations, public relations, safety and health; . . . and similar activities." 29 C.F.R. § 541.201(b).

Plaintiff Daryn Shaw, in his resume submitted to a home builder while this lawsuit was pending, described his responsibilities as a Construction Manager at Meritage as "responsibility for all construction management, budgeting, forecasting, subcontractor coordination, inventory management, quality control, inspection and permitting, customer satisfaction, and customer relations." *See* Shaw Resume, Exh. A to Defendants' Motion for Summary Judgment on Administrative Exemption. Shaw's description of the job responsibilities of a Construction Manager at Meritage is supported by Plaintiffs' deposition testimony.[8] Generally, Construction Managers monitored and organized the construction of Meritage homes, overseeing the construction process and ensuring that the construction went smoothly and on

---

[8]     Plaintiffs' deposition testimony was consistently nonresponsive to an unusual degree. For example, in response to the question "part of your duty was to complete the home on time, because like you said, that's in the best interest of the company?" Meredith responded, "I – I didn't build the homes." *See* Meredith Depo., p. 60.  In response to a question regarding whether Plaintiff Shaw on occasion submitted purchase orders and identified them as "rush" orders, Shaw responded "It's kind of funny you say "rush."  Every day is a rush.  Every day's Monday, and it never rains in the construction industry."  *See* Shaw Depo., pp. 205-06.  Notwithstanding Plaintiffs' clear attempts to avoid answering certain questions, their eventual testimony demonstrates that their job as Construction Managers at Meritage satisfies the requirements of the administrative exemption, as explained hereafter.

schedule.[9]  *See* Arasin Depo., p. 134; Meredith Depo., p. 34; Self Depo., pp. 38, 53, 61; Shaw Depo., p. 194.  The Construction Managers also supervised and watched over the trades to make sure Meritage polices were followed.  *See* Arasin Depo., pp. 160-61; Meredith Depo., p. 47 (responsible for scheduling and coordinating trades).  The "main thing" the Construction Managers were working on at Meritage was monitoring the construction of the "new homes," each of which varied from the others to some degree, if not substantially.  *See* Self Depo., at 53-54.  It is clear that it was these responsibilities that provided the most value to Meritage.

Plaintiffs' deposition testimony also demonstrates that their work directly related to Meritage's general business operations, which is the construction of new homes.  As described below, Plaintiffs performed work in the area of budgeting, purchasing, and procurement.  They managed the purchase of the materials to be used in the home construction.  *See, e.g.,* Shaw Depo., pp. 98-99.  This included investigating requests for additional materials.  *See id.* at 103.  They submitted necessary documentation, including variance purchase orders ("VPOs"), to order additional materials when needed.  *See* Arasin Depo., p. 78; Jones Depo., p. 212;

---

[9]     The uncontroverted evidence in the record is that the Construction Managers all had the same responsibilities and "did the same thing."  *See* Self Depo., p. 110.  Indeed, the substance of Plaintiffs' testimony was fairly consistent regarding their work for Meritage, although in some instances they used different phrasing.

Shaw Depo., pp. 107, 110.  VPOs that were "under a certain dollar amount" were submitted without being "signed off on" by a project manager.  *See* Meredith Depo., p. 69.    Plaintiffs also, when necessary, could adjust budgets and materials procurement.  *See* Arasin Depo., pp. 190-92; Meredith Depo., pp. 165-66; Shaw Depo., pp. 351-52.  This successful monitoring of budgeting, purchasing, and procurement issues was important in order to keep the construction process on schedule so the house could go to the closing on time.  *See*, Arasin Depo., p. 104; *see also* Jones Depo., p. 227.

Plaintiffs performed work in the area of quality control.[10]  They "walked" the homes on a daily basis to view the work being performed and to determine whether there were problems or issues that needed to be reported to the project manager.  *See* Arasin Depo., p. 90; Herman Depo., p. 57; Meredith Depo., p. 45; Shaw Depo., p. 115. They made sure that the homes were built to Meritage standards and industry code requirements.  *See* Arasin Depo., pp. 63, 131.  The Construction Manager's job was

---

[10]     Plaintiffs in their depositions refused to characterize their work as "quality control," insisting on referring to their work as checking whether the work was "complete." The deposition testimony, considered as a whole and in the light most favorable to Plaintiffs, establishes that a task's "completeness" included an evaluation of its quality.  *See* Arasin Depo., p. 129; Jones Depo., p. 160; Meredith Depo., p. 136; Self Depo., pp. 45-56, 89; Shaw Depo., p. 220.

to "try to build a quality home" that complied with "the quality guidelines [that] were set by Meritage."  *See* Arasin Depo., p. 88.

Plaintiffs' work involved managing the subcontractors or "trades."   They scheduled the trades as needed in the construction process, communicated with the trades, and verified that the trades were performing their work properly and safely. *See* Arasin Depo., pp. 102, 109-12 (would monitor the trades to make sure they were working and, if they were not, could ask them to "get back to work" and could notify their employer if they did not do so); Meredith Depo., pp. 76-77; Self Depo., pp. 52, 65.  They were the Meritage representative at the job site and the contact person for the trades.  *See* Meredith Depo., pp. 72-73.

Plaintiffs' work also involved customer relations and customer satisfaction. The Construction Manager conducted scheduled meetings with the customer.  *See* Arasin Depo., pp. 142-46.  During the "prestart" meeting, the Construction Manager would meet with the home buyer to verify the customer's selection of options and/or upgrades.  *See* Shaw Depo., pp. 318-20.  During the "first walk," the Construction Manager would walk through the completed home with the purchaser to identify any issues that needed attention or repair, and a "rewalk" was later conducted during which the Construction Manager again walked through the home with the purchaser

to make sure the issues identified during the "first walk" had been addressed to the purchaser's satisfaction.  *See id.* at 328, 346.

Plaintiffs argue that their primary duty did not consist of "non-manual work" because they also engaged in activities such as cleaning up and moving materials. From the perspective of quantity of time, no Plaintiff testified that he spent more than 50% of his time performing manual tasks.  *See, e.g.,* Herman Depo., p. 65; Jones Depo., p. 183; Self Depo., p. 106.  The focus of the "primary duty" inquiry, however, is on what the employee does that is of principal value to the employer, not on the collateral tasks that he may also perform even if the collateral manual tasks consume more than half his time.  *See Dalheim*, 918 F.2d at 1227; *see also Lott*, 203 F.3d at 332; *Howell*, 93 F. App'x at 14; 29 C.F.R. § 541.700(b).

Based on Plaintiffs' own description of their work, in their depositions and in Shaw's resume, the Court concludes that Plaintiffs' primary duty as a Construction Manager – to monitor and oversee the construction of new homes – consisted of non-manual work directly related to and important to Meritage's general business

operations.[11]  As a result, Defendants have satisfied the second requirement for the administrative exemption.

### C.    Exercise of Discretion and Independent Judgment

The third requirement for the administrative exemption is that the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(3). "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Talbert*, 405 F. App'x at 853 (quoting 29 C.F.R. § 541.202(a)).

"In general, the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a); *Talbert*, 405 F. App'x at 853.  It is not necessary that the employee have final decision making authority.  *See Lott*, 203 F.3d at 331. "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision."  29 C.F.R. § 541.202(c).

---

[11]    Plaintiffs argue that their work was not directly related to Meritage's general business operations because they did tasks related to the actual "production" of the new homes. This "administrative/production" distinction has been rejected by the Department of Labor and in this federal district. *See Villegas v. Dependable Const. Servs., Inc.*, 2008 WL 5137321, *7-*8 (S.D. Tex. Dec. 8, 2008) (Ellison, J.) (citing 2004 FLSA regulations).  Plaintiffs' primary duty was "directly related to" Meritage's general business operations, which was the construction of new homes; it was not their primary duty to perform the actual construction of the homes.

Employees can exercise discretion and independent judgment for purposes of the administrative exemption "even if their decisions or recommendations are reviewed at a higher level." *Id.* Indeed, "decisions made as a result of the exercise of discretion and independent judgment may consist of *recommendations for action* rather than the actual taking of action." *Id.* (emphasis added); *see also Talbert*, 405 F. App'x at 854.

Plaintiffs' deposition testimony demonstrates that they exercised discretion and independent judgment in such matters of significance as scheduling, determining whether a trade's task had been completed so the next phase of construction could begin, requesting additional or different materials, dealing with customers and trades, and making recommendations regarding which trades to use. Construction Managers were also given discretion to select a subcontractor of their choice from a master list of approved trades. *See* Shaw Depo., pp. 232-33. Indeed, when asked whether his job included exercising judgment, Plaintiff Self testified that it did. *See* Self Depo., p. 72.

In the area of scheduling, Construction Managers could provide input into changing schedules for various trades. *See* Arasin Depo., p. 118. Moreover, they could at times make changes on their own. *See id.* at 223-25 (Arasin unilaterally changed the schedule for the trash company). Plaintiffs argued that they did not manage the schedules for their projects because they used a computer program referred to as either "Hyphen" or "BuildPro." The computer program, however,

merely adjusted future deadlines based on input from Plaintiffs regarding tasks being completed early or, more often, late. *See, e.g.,* Robberson Depo., p. 159 (if a task was not completed on time, the Construction Manager would input a message into the computer program that instructed the program "to bump the schedule back" then the program "bumps everything back"). As in *Cheatham*, Plaintiffs' argument that they are "nothing more than data input clerks" is not supported by the record, and thus is rejected. *See Cheatham*, 465 F.3d at 585.

Plaintiffs exercised considerable discretion in determining whether a task was "complete." Meritage provided construction plans and guidelines, but the Construction Manager could review a task and determine whether it was completed "to meet Meritage policy." *See, e.g.,* Arasin Depo., pp. 81-84. The Construction Manager would walk through the house, make notes, and decide whether the task was complete. *See, e.g.,* Self Depo., pp. 90-92. If there was an issue that was minor in nature, the Construction Manager might decide to go ahead and input that the task was complete in order not to "hold the process up." *See id.* at 90. If the issue was more significant, however, the Construction Manager could determine that the task was not complete and could require the trade to return and repair it. *See id.* at 47; Shaw Depo., p. 332.

Plaintiffs also exercised discretion and independent judgment when requesting additional or different materials. When a trade requested additional materials, the Construction Manager investigated whether the request was legitimate. *See id.* at 95. Plaintiff Arasin testified that he suggested that a different product be used because it would be easier to install. *See* Arasin Depo., pp. 185-88.

Plaintiffs exercised discretion and independent judgment when dealing with the home purchasers, including those who were "angry." *See* Self Depo., p. 28. Plaintiff Arasin suggested a better way to orient a house on the lot. *See* Arasin Depo., p. 188-89. Plaintiff Self was given final decision making authority over whether to allow a purchaser an "extra outlet or something like that." *See* Self Depo., pp. 68-69. These are "matters of significance" because it was important to have the home "right for the buyers." *See* Meredith Depo., p. 94.

Plaintiffs argue that they did not exercise discretion or independent judgment because they were subject to review by the project managers. Their deposition testimony, however, establishes that the project managers were at the construction sites infrequently, averaging only three times per week. *See* Arasin Depo., p. 115; Shaw Depo., p. 126. Moreover, Plaintiff Shaw testified that at one point he did not have a project manager assigned to him. *See id.* at 377-78. As discussed above, in areas where Plaintiffs did not have final authority, they provided input and

recommendations that were considered by the project managers. "That some of [their] decisions were subject to review does not mean [they] exercised no discretion." *McKee v. CBF Corp.*, 299 F. App'x 426, 431 (5th Cir. 2008).

Based on Plaintiffs' deposition testimony, and the applicable legal authorities, the Court concludes that Plaintiffs exercised discretion and independent judgment with respect to matters of significance in their work as Construction Managers. As a result, Defendants have satisfied the third requirement for the administrative exemption.

### D.   Conclusion

Plaintiffs' deposition testimony, together with Shaw's resume, demonstrates as a matter of law that they were exempt from FLSA's overtime requirements pursuant to the administrative exemption. Plaintiffs have failed to raise a genuine issue of material fact to the contrary. As a result, Meritage is entitled to summary judgment on Plaintiffs' FLSA claim.

## IV.   CONCLUSION AND ORDER

Plaintiffs' evidence establishes as a matter of law that they were exempt employees under the administrative exemption. As a result, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment on Administrative Exemption [Doc. # 80] is **GRANTED**. It is further

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [Doc. # 76] is **DENIED** as to the administrative exemption and otherwise **DENIED AS MOOT**. It is further

**ORDERED** that Defendants' Motion for Summary Judgment on Alleged Unpaid Overtime [Doc. # 84] is **DENIED AS MOOT**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **23rd** day of **May, 2014**.

Nancy F. Atlas
United States District Judge